# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| **CURTIS LEE JOHNSON** | **CIVIL ACTION NO. 6:13-cv-2252** |
| **LA. DOC #397021** | |
| **VS.** | **SECTION P** |
| | **JUDGE RICHARD T. HAIK, SR.** |
| **NATHAN CAIN, WARDEN** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

### SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION

*Pro se* petitioner Curtis Lee Brown filed the instant petition for writ of *habeas corpus* on July 1, 2013. Petitioner is an inmate in the custody of Louisiana's Department of Corrections. He attacks his 2010 conviction for aggravated incest and the sentence imposed by the Sixteenth Judicial District Court, St. Mary Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  For the following reasons it is again recommended that the petition be **DISMISSED WITH PREJUDICE.**

### *Statement of the Case*

Petitioner was convicted of aggravated incest on March 26, 2010; on August 18, 2010 he was sentenced. He appealed his conviction to the First Circuit Court of Appeal raising five assignments of error.[1] On December 29, 2011 the First Circuit affirmed petitioner's conviction in

---

[1]  Petitioner argued – (1) The lower court abused its discretion when it denied petitioner's post-trial motions without a hearing because the motions raised substantial issues that, if true, deprived petitioner of his right to testify and to present a defense; (2) The lower court erred by denying petitioner's motion for post-verdict judgment of acquittal, arrest of judgment, and new trial because petitioner's un-refuted proffer in support of those motions proved that petitioner had been deprived of his right to testify and to present a defense; (3) The lower court erred by denying petitioner's motion in arrest of judgment because the indictment was clearly defective

an unpublished opinion. *State of Louisiana v. C.L.J.*, 2011-0972 (La. 12/29/2011), 2011 WL 6916529. [Doc. 1-1, pp. 37-48] On January 10, 2012, petitioner applied for rehearing [Doc. 1-1, pp. 28-36] and on February 22, 2012 his application for rehearing was denied.

On March 21, 2012 petitioner's appellate counsel filed an application for writs in the Louisiana Supreme Court in which he argued only that the trial court and court of appeals erred in their rulings on petitioner's motion for a new trial based on the claim that petitioner was prohibited from testifying in his own defense by trial counsel. [Doc. 1-1, pp. 2-9] On September 14, 2012 the Supreme Court denied writs without comment. *State of Louisiana v. Curtis Lee Johnson*, 2012-0677 (La. 9/14/2012), 98 So.3d 821. [Doc. 1-1, p. 1]

Petitioner filed his federal *habeas* petition on July 1, 2013.  He argued the same claims raised on appeal to the First Circuit Court of Appeals. [Doc. 1]

On August 16, 2013 a Report recommended dismissal with prejudice. That recommendation was based on the following observation:

> Petitioner failed to exhaust available state court remedies with regard to Claims 3, 4, and 5 and the claim asserted in Claims 1 and 2 concerning the denial of his right to present a defense, when his attorney failed to raise those claims in his writ application to the Louisiana Supreme Court.  As previously observed, petitioner's appellate counsel raised a single claim for review in his application for writs filed in the Supreme Court, namely, that the trial court and the Court of Appeals erred in their interpretation of *State v. Hampton*, 00-0522 (La. 3/22/02), 818 So.2d 720 with regard to the quantum of proof needed to obtain a hearing on a motion for a new trial based on the claim that trial counsel prohibited the defendant from testifying on his own behalf.

---

and it omitted the essential averments of the statute; (4) The lower court erred by limiting *voir dire* to 1 hour per panel of prospective jurors because this deprived petitioner of full *voir dire* examination of prospective jurors; (5) The lower court erred by denying the petitioner's *Batson* challenge. [Doc. 1-1, pp. 10-27]

[FN – The assignment of error submitted in the Supreme Court writ application was as follows, "The two judges in the majority appellate court opinion believed that *State v. Hampton*, 00-0522 (La. 3/22/02), 818 So.2d 720 stands for the proposition that a defendant who claims after his trial that his attorney deprived him of his right to testify in his defense must present his trial attorney's affidavit admitting her Constitutional error. Citing a passage from *Hampton* taken from *Passos-Paternina v. U.S.,* 12 F. Supp.2d 231 (P.R. 1998), the two appellate judges decided that a defendant can never win a new trial without that affidavit. The majority erred in its statement and application of the burden established in *Hampton* and *Passos-Paternina*." [Doc. 1-1, p. 6] Counsel's decision to argue only that aspect of Assignments of Error 1 and 2 leaves state court remedies, with respect to the remaining Assignments of Error, unexhausted.]

The Report further observed that the record submitted by petitioner clearly established that he "... failed to exhaust available state court remedies with regard to Claims 3, 4, and 5 and the claim asserted in Claims 1 and 2 concerning the denial of his right to present a defense, when his attorney failed to raise those claims in his writ application to the Louisiana Supreme Court." [Doc. 7] Thereafter, the Report observed that although these claims remained unexhausted, the claims were, in effect, procedurally defaulted based upon the following:

However, it also appears that petitioner would be unable to return to the Louisiana courts to fully exhaust remedies. Louisiana Supreme Court Rule X, §5(a) imposes a 30 day limitation period for seeking review of the judgment of a Court of Appeals and therefore petitioner could not now obtain Supreme Court review of his unexhausted *habeas* claims; further, La. C.Cr.P. art. 930.4 generally prohibits successive or repetitive petitions and specifically prohibits, unless required in the interest of justice, consideration of 'any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence...'

Thus any attempt to return to the Louisiana Courts to litigate Assignments of Error 3, 4, and 5, and that subset of Assignments 1 and 2 dealing with the petitioner's right to present a defense, would likely be rejected as untimely if raised again in a writ submitted to the Supreme Court and as successive if raised in an application for post-conviction relief in the District Court. [Doc. 7]

Having determined that petitioner's claims were technically exhausted but now procedurally defaulted, the Report then observed, "Generally, federal *habeas* courts may not review the merits of these technically exhausted but procedurally defaulted claims  unless the petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing proper exhaustion of his state court remedies, or, failing that, by showing either cause and prejudice or that a miscarriage of justice will result from the denial of federal *habeas corpus* review. [citations omitted]"  [Doc. 7] The Report concluded that petitioner failed to show that he should be excused from the application of the procedural default doctrine.

As to the arguably exhausted claim, the Report made the following observations:

> Plaintiff presented that portion of Assignments of Error 1 and 2 (dealing with the post-verdict motions based on the allegation that counsel refused to allow petitioner to testify on his own behalf) to the Louisiana Supreme Court on direct review.  However, federal *habeas corpus* relief is available only to State prisoners who are '... in custody in violation of the Constitution or laws or treaties of the United States.' [citations omitted]

> As previously noted, with regard to Assignments of Error 1 and 2, petitioner alleged on appeal to the First Circuit, 'The lower court abused its discretion when it denied appellant's post-trial motions, including his motion for a new trial, without giving the appellant a hearing on those motions...' and, 'The lower court erred by denying the appellant's motions for post-verdict judgment of acquittal, arrest of judgment, and new trial ...' [Doc. 1-1, p.12] Thereafter, in his writ application to the Louisiana Supreme Court, petitioner argued that the Court of Appeals 'erred in its statement and application of the burden (of proof to obtain a hearing on a motion for new trial) as established in *State v. Hampton*...'

> Clearly, petitioner, throughout his State court proceedings, and in this Court as well, argued that the District Court, the Court of Appeals, and the Supreme Court of Louisiana erred in applying Louisiana law by not affording petitioner a hearing before ruling on his post-verdict motions.  That claim is simply not cognizable in this federal *habeas corpus* proceeding.  This Court cannot grant *habeas corpus* relief based on claims of error made by the Louisiana courts in interpreting and

applying Louisiana law. [citations omitted] Put another way, '[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.' [citations omitted] [Doc. 7]

Based on the foregoing, the Report recommended dismissal with prejudice. [Doc. 7]

On August 28, 2013 petitioner filed an objection to the Report and Recommendation. Therein he noted his agreement with regard to the Report's conclusions concerning exhaustion and procedural default, but objected to the conclusion that his exhausted claim raised only State issues.[2] He asserted his actual innocence and argued that he did indeed properly exhaust his Federal Constitutional claim that he was denied the right to testify on his own behalf. [Doc. 9]

On January 22, 2014 the district court adopted the Report and Recommendation and ordered dismissal with prejudice. [Doc. 11]

On January 28, 2014 the petitioner filed a "Motion for Reconsideration" in which he argued that his petition should have been construed as a "mixed petition" since it contained claims which were exhausted and claims which were not exhausted. He also argued that he was entitled to an evidentiary hearing with regard to his original claim that he was denied the right to testify on his own behalf.  He also argued that he was raising a claim of ineffective assistance of counsel which had been exhausted. [Doc. 12]

On February 3, 2014 petitioner filed a motion for evidentiary hearing. Therein he requested this Court to convene a hearing in order to determine whether or not he was denied his right to testify on his own behalf. [Doc. 13] On May 22, 2014 the district court referred the Motion for Reconsideration and the Motion for an Evidentiary Hearing to the undersigned. [Doc.

---

[2] Petitioner wrote, "Petitioner does agree with the Magistrate on claims three, four, and five. Petitioner's argument is claim one and two." [Doc. 9]

5

16] On June 30, 2014 a Supplemental Report and Recommendation issued. The Supplemental

Report  made the following observation:

> Petitioner contends that he is entitled to relief because his petition was a 'mixed petition' containing both exhausted and unexhausted claims and therefore he should have been presented with the option to dismiss his unexhausted claims and proceed to ruling only on the exhausted claims, or, in the alternative, that the Court should have stayed the proceedings to allow him the opportunity to return to the Louisiana courts to exhaust all unexhausted claims.  The Report, insofar as it recommended dismissal of petitioner's unexhausted *habeas corpus* claims as procedurally defaulted, was incorrect.  As noted in the Report, petitioner would be unable to raise his unexhausted claims in an application for *certiorari* in the Louisiana Supreme Court because under that Court's Rule X, §5(a), he was required to file the application within 30 days of the date that the Court of Appeals mailed notice of judgment.  The Report also concluded that petitioner would be unable to raise his claims in an application for post-conviction relief since La. C.Cr.P. art. 930.4(A) generally prohibits consideration of claims that were 'fully litigated in an appeal.'  If the Court were to stay the proceedings to allow petitioner the opportunity to return to the Louisiana Courts in an attempt to exhaust his unexhausted claims *via* an application for post-conviction relief, it is highly likely, indeed, almost certain, that his application would be dismissed pursuant to art. 930.4(A).
>
> > [FN – The Louisiana Supreme Court routinely relies upon art. 930.4(A) to reject as repetitive applications for post-conviction relief which seek to litigate claims previously addressed on appeal. See for example: *State ex rel. Lee v. State*, --- So.3d ----, 2014 WL 1814050, 2013-2229 (La. 4/25/14); *State ex rel. Charles v. State*, 135 So.3d 635, 2013-2043 (La. 4/4/14); *State ex rel. Trainor v. State*, 131 So.3d 55, 2013-1650 (La. 1/27/14);  *State ex rel. Fortune v. State*, 126 So.3d 1282, 2013-1437 (La. 12/2/13); *State ex rel. Johnson v. State*, 125 So.3d 425, 2013-1240 (La. 11/1/13); *State ex rel. St. Romain v. State*, 98 So.3d 821, 2012-0590 (La. 9/12/12); *State ex rel. Kaigler v. State*, 97 So.3d 359, 2012-0049 (La. 8/22/12); *State ex rel. Craft v. State*, 85 So.3d 110, 2011-1434 (La. 3/30/12);  *State ex rel. Lee v. State*, 82 So.3d 278, 2011-0757 (La. 2/17/12); *State ex rel. Thornton v. State*, 976 So.2d 711, 2007-0924 (La. 2/1/08); *State ex rel. Mead v. State*, 967 So.2d 532, 2007-0384 (La. 11/21/07); *State ex rel. Paul v. State*, 966 So.2d 567, 2007-0158 (La. 10/26/07).]

In other words nothing would be gained by staying these proceedings to allow

petitioner to return to the Louisiana courts to raise claims that would most certainly be rejected as repetitive.

The Report and Recommendation concluded that art. 930.4(A), to the extent that it precludes post-conviction review of claims already 'fully litigated' on direct appeal, would operate as a procedural bar prohibiting habeas review of the petitioner's claims. However, Fifth Circuit jurisprudence suggests otherwise. '[T]he bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits.' *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir.1994).  In other words, the art. 930.4(A) bar does not preclude *habeas* review of claims that were considered on direct appeal. The *habeas* court is instead authorized and directed to 'look-through' the ruling on collateral review (or, as in this case to 'look-through' the anticipated ruling on collateral review) and consider only the direct appeal proceeding. *Bennett*, at 1582–83 (citing *Ylst v. Nunnemaker*, 501 U.S. 797 at 804, f.n. 3.)

> [FN –  Therein the Court explained,  '[When] the later state decision rests upon a prohibition against further state review-for example, an unexplained denial of state habeas resting in fact upon a rule ...  preventing the relitigation on state habeas of claims raised on direct appeal. In that circumstance, even though the presumption does not posit the real reason for the later denial, it does produce a result ('looking through' to the last reasoned decision) that is the correct one for federal habeas courts. Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default, its effect upon the availability of federal habeas is nil-which is precisely the effect accorded by the 'look-through' presumption...']

The Report recommended that petitioner's Motion to Reconsider be construed as a Motion for Relief From Judgment (FRCP Rule 60(b)(6)) and that it be granted in part; the Report also recommended that the Judgment of January 22, 2014 be vacated and that the matter be referred to the undersigned for further proceedings. The Report also recommended that the Motion for an Evidentiary Hearing be denied. [Doc. 17]

On July 8, 2014 petitioner objected to the Supplemental Report and Recommendation and

to the denial of his motion for an evidentiary hearing. [Doc. 18] On the same date he filed a Motion to Amend/Correct Petition for Writ of Habeas Corpus in which he again conceded that he failed to exhaust available State court remedies with respect to Claims 3, 4, and 5, and, he expressed his desire to go forward with the litigation of the "claims the Western District sees as exhausted..." [Doc. 19] On October 1, 2014 the district court adopted the Supplemental Report and Recommendation and vacated the prior judgment of dismissal. [Doc. 21] On October 24, 2014 petitioner's Motion to Amend/Correct Petition for Writ of Habeas Corpus was granted. [Doc. 24] On the same date, the clerk was directed to prepare summons and serve the petition and order on the respondent. In the service order, respondent was specifically directed to "address whether the holding of *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) ... applies to the case at bar." In the alternative respondent was directed to address the relative merits of the exhausted and unexhausted claims. [Doc. 25]

On January 27, 2015 the respondent filed an Answer, Memorandum, and a copy of the State Court record as directed. In the Answer the respondent raised defenses of time-bar; exhaustion and procedural default; and further argued that each claim in the alternative was without merit. [Doc. 31] Thereafter, on January 28, 2015 respondent filed a Memorandum in Opposition to Post Conviction Relief. [Doc. 35] Petitioner thereafter filed a response. [Doc. 37] On February 12, 2015 the respondent filed the State court record. [Doc. 39] On February 25, 2015 petitioner filed a Motion to Expand the Record to add a claim of ineffective assistance of trial counsel. [Doc. 38]

***Law and Analysis***

### *1. Exhaustion/Procedural Default*

Respondent has raised the issues of exhaustion and procedural default in the Answer filed on January 27, 2015. [Doc. 31] As was previously noted in the original Report and Recommendation as well as the first Supplemental Report and Recommendation, petitioner seeks *habeas corpus* relief asserting the same claims raised on direct appeal to the First Circuit Court of Appeal. However, as was also noted, when petitioner's retained appellate counsel sought further direct review in the Louisiana Supreme Court, he chose to address only one aspect of the claim. As noted in the original Report and Recommendation,

> The assignment of error submitted in the Supreme Court writ application was as follows, 'The two judges in the majority appellate court opinion believed that *State v. Hampton*, 00-0522 (La. 3/22/02), 818 So.2d 720 stands for the proposition that a defendant who claims after his trial that his attorney deprived him of his right to testify in his defense must present his trial attorney's affidavit admitting her Constitutional error. Citing a passage from *Hampton* taken from *Passos-Paternina v. U.S.,* 12 F. Supp.2d 231 (P.R. 1998), the two appellate judges decided that a defendant can never win a new trial without that affidavit. The majority erred in its statement and application of the burden established in *Hampton* and *Passos-Paternina*." [Doc. 1-1, p. 6] Counsel's decision to argue only that aspect of Assignments of Error 1 and 2 leaves state court remedies, with respect to the remaining Assignments of Error, unexhausted. [Doc. 1, p. 5, fn 1]

As previously noted, petitioner ultimately agreed with the Report's assessment that State court remedies with respect to claims 3,4 and 5 remained unexhausted. [See Doc. 9] He disagreed, however, with the Report's conclusion that State court remedies with regard to his substantive claim concerning the denial of his right to testify and to otherwise present a defense remained unexhausted.  Nevertheless, for the reasons asserted in the original Report and Recommendation, it is clear that State court remedies remain unexhausted with respect to **ALL**

of petitioner's Assignments of Error, **EXCEPT** the narrow claim that the appellate court erred

"... in its statement and application of the burden established in *Hampton* and *Passos-Paternina*."

[Doc. 1-1, p. 6]

Having concluded that State court remedies remained unexhausted with respect to all but

one aspect of petitioner's claims for relief, the original Report observed that these claims would

now be subject to dismissal as procedurally defaulted should petitioner attempt to litigate them in

State court.  Petitioner ultimately objected on the grounds that his pleading was in effect, a

"mixed petition" and therefore he should have been presented with the option to dismiss his

unexhausted claims and proceed to ruling only on the exhausted claims, or, in the alternative, that

the Court should have stayed the proceedings to allow him the opportunity to return to the

Louisiana courts to exhaust all unexhausted claims. [Doc. 12]

The Supplemental Report and Recommendation rejected the notion that petitioner's

pleading should be treated as a "mixed petition" since review of the Louisiana Supreme Court

jurisprudence revealed numerous instances where the high court, citing La. C.Cr.P. art. 930.4(a),

rejected attempts by applicants to litigate post-conviction claims that had been fully litigated on

direct appeal. [See Doc. 17, pp. 4-5, fn 5] As noted in the original Report,

> While State court remedies with respect to petitioner's *habeas* claims were not
> exhausted, these claims can be said to be 'technically exhausted' since State court
> remedies are no longer available. (A petitioner has 'technically exhausted' his
> federal claim if he fails to properly and timely present it to the state courts and is
> thereafter barred from seeking relief in those  courts.  *Magouirk v. Phillips*, 144
> F.3d 348 (5th Cir.1998) citing *Coleman v. Thompson*, 501 U.S. 722, 731-33, 111
> S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th
> Cir.1995); *Coleman*, 111 S.Ct. 732, 735 fn. 1; *Bledsue*, 188 F.3d at 254-55; *Fuller
> v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998). In such a case, however, there is
> no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d
> at 358. Accordingly, when a petitioner fails to exhaust state court remedies

because he has allowed his federal claims to lapse, those claims are considered 'technically' procedurally defaulted. *Id.*) [Doc. 7, p. 6]

The Supplemental Report, citing *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir.1994) ("[T]he bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits..."), then observed that the original Report was incorrect insofar as it concluded that petitioner's unexhausted claims would be procedurally barred. [Doc. 17]

It now appears, upon further analysis, that the Supplemental Report's conclusion concerning *Bennett* was incorrect.  The bar imposed by article 930.4(A) does not generally preclude federal *habeas* review of repetitive claims. *See Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994).  However, unlike this case, *Bennett* involved claims which had been fully exhausted on direct appeal.  *Id.* at 1582 ("Bennett exhausted his remedies on direct appeal.")  Thus, application of the *Bennett* rule would not "lift[ ] a pre-existing procedural default." *Id*. at 1583 *citing  Ylst v. Nunnemaker*, 501 U.S. 797, 804, fn. 3, 111 S.Ct. 2590, 2595, fn. 3, 115 L.Ed.2d 706 (1991).

 In this case, the *Bennett* rule could not benefit petitioner in the event he returned to state court and thereafter re-filed his claims in this court.  *Bennett* would direct this Court to "look-through" the anticipated ruling on collateral review imposing the article 930.4(A) bar and consider only the First Circuit Court of Appeal's rulings on direct appeal.  *Id.* at 1582-83.  However, for the reasons previously noted, those rulings were never properly presented to the Louisiana Supreme Court for review and therefore have never been properly exhausted.  In other words, *Bennett* cannot be read as allowing a

federal *habeas* petitioner to obtain merits review of unexhausted claims by presenting these claims through the "backdoor" under *Bennett*.  It would be illogical to conclude that an unexhausted claim could somehow become reviewable by virtue of the *Bennett* holding.  Such a holding would be in direct contravention of well established federal jurisprudence mandating exhaustion of State court remedies which was cited at length in the original Report and Recommendation. A rote application of *Bennett* in this case would operate to condone petitioner's pre-existing procedural default, a result clearly not intended, or mandated, by *Bennett*.

In sum, for the reasons set forth in the original Report and Recommendation, State court remedies with respect to those claims for relief identified in the Report remain unexhausted, however, those same claims must be considered as procedurally defaulted since petitioner would be unable to return to the Louisiana courts and attempt to litigate the claims in a post-conviction proceeding. Petitioner's inability to demonstrate cause, prejudice, or a miscarriage of justice preclude further Federal review of those claims. Further, for the reasons set forth in the original Report, petitioner's sole exhausted claim, which raised only errors of State law, should also be dismissed.

## 2. Merits

### A. The Standard of Review.

Even if petitioner's claims are afforded Federal *habeas corpus* review, he is still not entitled to relief.

The AEDPA standard of review provides different standards for questions of fact, questions of law, and mixed questions of fact and law. A state court's factual findings are presumed correct, and a reviewing court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). The statute codifies both the presumption of correctness that attaches to state court findings of fact and the clear and convincing evidence burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact must be given deference unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000), *cert. denied*, 532 U.S. 1039 (2001).

A state court's decision is contrary to clearly established federal law if: (1) the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir.2010); *Hill v. Johnson*, 210 F.3d at 485.

A state court decision unreasonably applies federal law if it either: (1) correctly

identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Penry v. Johnson*, 532 U.S. at 792; *Woodfox v. Cain*, 609 F.3d at 789.

An unreasonable application of federal law is different from an incorrect application of federal law. The court need not determine whether the state court's reasoning is sound; rather "the only question for a federal *habeas court* is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir.2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price v. Vincent*, 538 U.S. 634, 641 (2003).

In this case, petitioner seeks relief from the Louisiana First Circuit Court of Appeal's judgment on direct review. Under the various scenarios described above, that ruling would be entitled to deference and, as will be shown in the following discussion, should not be disturbed.

**B. Claims One and Two – The lower court abused its discretion when it denied petitioner's post-trial motions without a hearing because the motions raised substantial issues that, if true, deprived petitioner of his right to testify and to present a defense; and, (2) The lower court erred by denying petitioner's motion for post-verdict judgment of acquittal, arrest of judgment, and new trial because petitioner's un-refuted proffer in support of those motions proved that petitioner had been deprived of his right to testify and to present a defense.**

Once the jury was selected, the prosecutor moved for sequestration of witnesses. [Doc.

39-8, p. 24, SCR[3] p. 1353] Defense counsel advised the court, "I think she's I guess referring to my witnesses and the problem is we still haven't determined who we..." At which point counsel was interrupted by the court who reminded her, "Well, then if they sit in the courtroom and you haven't called as a may call, then they won't be able to testify." Thereafter counsel identified three "may call" witnesses, Mira Johnson, the victim's mother, and John or Jon Johnson, the defendant's brother and victim's uncle, and a witness identified only as the victim's aunt; these witnesses were placed under the rule of sequestration. [Doc. 39-8, pp. 27-34; SCR, pp. 1356-1363] On the following day, counsel advised the court that John or Jon Johnson would not be called as a witness and he was thereafter released from sequestration. [Doc. 39-9, pp. 5-6; SCR, pp.  1512-1513]

Thereafter, following the completion of the State's case, the State rested, and counsel for the petitioner announced, "Your Honor, at this time we choose to present no evidence." [Doc. 39-9, p. 160; SCR, p. 1667] In order to give the attorney's an opportunity to "collect themselves," the trial judge ordered a recess and advised the jury to return at 9:00 a.m. on the following day. [Doc. 39-9, p. 161, SCR p. 1668] At that point the jury exited the courtroom and the judge, counsel, and the petitioner remained in court for a charge conference. Counsel for the petitioner voiced agreement concerning the responsive verdicts of guilty as charged, guilty of attempted aggravated incest, and not guilty and asked her client if he concurred, to which he responded in the affirmative.  The court then asked petitioner, "And we have been talking about

---

[3] Hereinafter, the abbreviation "Doc." will refer to the Document and Page Number assigned to the exhibits filed herein on CM/ECF; the abbreviation SCR stands for State Court Record and will refer, where possible to the page assigned by the St. Mary Parish Clerk of Court when the record was prepared for appeal.

this since Tuesday at the end of each day and we've gone over it and you knew what my posture was and that's where you are, sir?" To which he responded in the affirmative. The court then observed, "And I know that you've had ample time to confer with your attorney and that you also have your family that's been here and that's a big help so that we don't have to go and look for people – so, and I know how Ms. Jones works. So we are going to do the regular stuff and then we'll just define..."  Thereafter a lengthy discussion ensued concerning the jury instruction for the offense itself and other matters, at the end of which court formally adjourned. At no time during this interlude did petitioner voice any objection concerning the denial of his right to testify or otherwise present a defense.  [Doc. 39-9, pp. 162-177; SCR 1669-1684]

On the following day, during jury deliberations, the jury forwarded a note to the court which asked, "Was he (Curtis) allowed witnesses for his defense[?]" [Doc. 39-3, p. 23; SCR p. 630, Court Exhibit #3] Upon receipt of the query, the court reconvened outside the presence of the jury and advised counsel and the petitioner, of the substance of the inquiry and of her plans to address it. Thereafter the jury reentered the courtroom and the judge again instructed the jury on the burden of proof and the defendant's right not to testify. The jury then again retired to deliberate and once again, petitioner made no comments or objections concerning his desire to testify or present additional defense. [Doc. 39-10, pp. 72-74; SCR, pp. 1737-1739] Following the rendition of the verdict and the release of the jury, petitioner likewise raised no claim that he was denied the right to testify or present his defense. [Doc. 39-10, pp. 80- 85;  SCR, pp. 1745-1750]

Thereafter on June 15, 2010 petitioner's trial counsel filed a motion to withdraw as counsel of record noting that "... her services were terminated by the client on or about June 15, 2010..." The motion was initially denied, but then granted on July 9, 2010 in open court.

16

Presumably petitioner did not advise the court at that time that he had been denied his right to testify or present a defense. [Doc. 39-3, pp. 45-47; SCR, pp. 639-641]

Petitioner then retained Mr. Boustany as his attorney. On August 12, 2010 Boustany filed a Motion for Post Verdict Judgment of Acquittal, a Motion in Arrest of Judgment, and a Motion for a New Trial. [Doc. 39-3, pp. 58-71; SCR 642-654] In the Motion for Post Verdict Judgment of Acquittal, petitioner argued that the evidence was insufficient to support his conviction. His Motion in Arrest of Judgment argued that the indictment was defective. His Motion for New Trial alleged, "... the defendant told his attorney that he wanted to testify but she never called him as a witness and rested the defendant's case without calling him as a witness; he also alleged that counsel failed to call key witnesses and thus deprived him of his right to mount a defense; and, he also alleged that his rights were violated when the court imposed a time limit on voir dire. [*Id.*]

On August 19, 2010, the date previously fixed for sentencing, counsel was permitted to argue the relative merits of his motions. Nevertheless, each motion was summarily denied and the court, after hearing character evidence from petitioner's witnesses,  imposed sentence. [Doc. 39-10, pp. 86-139; SCR pp. 1751-1804] On the same date counsel was allowed to tender a proffer in the form of proposed testimony from petitioner's relatives, Gilbert Johnson, Wardell Johnson, and Mira Johnson. [Doc. 39-10, pp. 141-153; SCR 1806-1818; Doc. 39-11, pp. 1-9; SCR 1819-1827]

On August 26, 2010 counsel supplemented the proffer by providing affidavits from the petitioner, Johnny Thomas (petitioner's brother-in-law), Mira Johnson (petitioner's wife and the mother of the victim), Wardell Johnson (petitioner's father), and Gilbert Johnson (petitioner's

brother). [Doc. 39-3, pp. 96-108; SCR 679-691]

On appeal, as here, petitioner argued Assignments of Error No. 1 and 2 together. In his brief on appeal to the First Circuit petitioner claimed that he "told his attorney that he wanted to testify but she never called him as a witness and rested the appellant's case without calling him as a witness." He also alleged that if counsel would have called him and his witnesses to testify they would have refuted the testimony of the child-victim, provided motive for the victim to lie in the form of testimony that he was having difficulties with his mother-in-law, the child's grandmother, and, they would have refuted the other crimes evidence provided by Lajohnda Offord. [Doc. 39-12, pp. 30-34]

The First Circuit rejected these assignments of error and in so doing made the following findings of fact and conclusions of law:

1. Petitioner's motion for new trial was based on LSA C.Cr.P. art. 851(5) – his claim that justice would be served by the granting of a new trial, even though he may not be entitled to relief as a matter of right. The trial court has great discretion and, since the motion is based on the premise that injustice has been done the defendant, unless injustice is shown, the motion must be denied.

2. The defendant has a constitutionally protected right to testify on his own behalf. Absent circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify during trial; the court should assume, that a criminal defendant, by not 'attempting to take the stand,' has knowingly and voluntarily waived his right to testify.

3. If the petitioner raises the issue after trial the he bears the burden to show that his

18

attorney caused him to forego his right to testify; this he may do by alleging facts, including the affidavit of counsel, and by demonstrating from the record that specific factual allegations would be credible. A petitioner must present his claim with sufficient particularity to withstand summary denial on the pleadings without further evidentiary proceedings.

4. In this case there was no indication to the trial court that the defendant and his counsel were in conflict over this issue;[4] nor did the defendant present an affidavit by trial counsel to that effect. Petitioner submitted only the proffered testimony of his brother and father, who claimed the defendant wanted to testify, and his own affidavit in which he claimed that he had notified his attorney that he wanted to testify.

5. The motion for new trial also alleged the defendant was denied the opportunity to present witnesses on his behalf because counsel refused to call them. Such claims contend that counsel was ineffective and are not appropriate to review on direct appeal, but rather should be raised in an application seeking post-conviction relief. The trial court did not abuse its discretion in denying the motion for a new trial since neither of the family members, who claimed there was an expert witness who would testify there was no medical evidence of molestation, could identify the doctor whose testimony was sought; and, the examining physician already had testified that a doctor would not conclusively diagnose sexual assault, but could only relate specific facts found

---

[4] As shown above, there was no indication of a conflict between petitioner and his attorney during the course of the trial. There were ample opportunities for the petitioner to address the court concerning his right to testify, or any other conflicts with trial counsel, however, petitioner chose to remain silent until well after the conclusion of the trial. Further, petitioner did not provide the affidavit of his trial counsel, even after he was advised of its importance by the First Circuit Court of Appeals.

during an examination.[5]

6. Regarding the witness whose testimony was offered to impeach the credibility of the other crimes testimony, the record established that the witness, Ms. Offord, was thoroughly cross-examined about her living situation during the time period in question[6]; and regarding the victim's mother's purported testimony that the defendant was never alone in the house with the victim, the victim herself testified that her mother and siblings were in the house at the time, although not in the bedroom with the defendant.[7] *State of Louisiana v. C.L.J.*, 2011 WL 6916529 at *2-4.

The Court of Appeal's findings of fact with regard to these claims for relief have not been shown to be erroneous. Indeed, these factual findings are completely supported by the trial transcript.  Further, petitioner has not shown that the court's conclusions of law amounted to an unreasonable application of federal law.

As noted throughout, a criminal defendant has the constitutional right to testify in his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 2709-10, 97 L.Ed.2d 37 (1987). However, a *habeas* petitioner claiming the denial of this right has the burden of proof, and he cannot prevail merely by alleging that he told counsel that he wished to testify but counsel forbade him. *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir.1991). As noted above, there

---

[5] See testimony of Dr. Whitney, Doc. 39-8, pp. 73-125 at pp. 81-82; SCR p. 1401- 1454 at p. 1410 - 1411.

[6] See testimony of Ms. Offord, Doc. 39-9, pp. 121-157, especially cross-examination by Ms. Jones at pp. 149-156; SCR 1628-1664.

[7] See testimony of A.J., Doc. 39-9, pp. 43-80; SCR 1550-1587, especially p. 60, p. 75; SCR p.1566, p. 1582.

were ample opportunities available during the course of the trial for petitioner to alert the court to his alleged disagreement with counsel; however, he chose not to do so.  He chose instead to raise this issue in his post-verdict motions.

Under prevailing federal law, a bare bones assertion by a *habeas* petitioner, that his trial counsel denied him the right to testify on his own behalf, even if made under oath, is insufficient to even warrant a hearing or other action on such a claim. *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir.1987). Federal courts are in agreement that additional evidence, such as the affidavit of the attorney who is alleged to have forbidden  his client to testify is necessary to warrant a further investment of judicial resources in determining the truth of the claim. *Underwood*, 939 F.2d at 475-76.

That, in essence, is the rule of law relied upon by the district court and the Court of Appeals in rejecting petitioner's post-trial motions. Petitioner has not, nor can he show that these conclusions were an incorrect, much less unreasonable, application of federal law.

Likewise, the State Courts concluded that with regard to the right to present a defense, such claim should have been raised as an ineffective assistance of counsel claim presented in an application for post-conviction relief, and not as the appeal of the denial of a post-verdict motion. Again, petitioner has not shown that this holding is an unreasonable application of law. *Compare Sayre v. Anderson*, 238 F.3d 631 (5th Cir. 2001).

In short, even if Claims One and Two are to be considered fully on the merits, petitioner is not entitled to *habeas corpus* relief because he failed to offer the proof necessary to obtain an evidentiary hearing on the claim that he was denied his right to testify, and, because his claim concerning the denial of his right to present a defense, should have been raised in an application

21

for post-conviction relief alleging ineffective assistance of counsel.

**C. Claim Three – The lower court erred by denying petitioner's motion in arrest of judgment because the indictment was clearly defective and it omitted the essential averments of the statute.**

The First Circuit Court of Appeals characterized the next assignment of error as follows:

> In his third assignment of error, the defendant claims the trial court erred by denying his motion in arrest of judgment because the indictment was defective. Louisiana Code of Criminal Procedure article 859 provides the grounds for arrest of judgment, including the claim that the indictment is 'substantially defective, in that an essential averment is omitted.' The defendant's motion in arrest of judgment claims the bill of information was deficient because it did not allege that the victim was under the age of 13 and the defendant was over the age of 17. He further claims the bill was defective because it does not identify an alleged victim, the relationship of the victim to the defendant, does not identify the ages of the victim or the defendant, and does not allege which prohibited acts the defendant is alleged to have committed.

> *State of Louisiana v. C.L.J., supra*, at *5.

In denying relief, the Court of Appeal determined that this assignment was procedurally defaulted under Louisiana law based upon petitioner's failure to file a timely pre-trial motion to quash the indictment or bill of information.

The procedural default doctrine bars federal *habeas corpus* review when a state court declines to address a petitioner's federal claims because the petitioner has failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553-54, 115 L.Ed.2d 640 (1991). "[I]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal *habeas* review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice." *Id.* at 750-51. This doctrine ensures that federal courts give proper respect to state procedural rules. *Id.*

Furthermore, the doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1996). However, a petitioner can rebut this presumption by establishing that the procedural rule is not strictly or regularly followed. *Moore v. Roberts*, 83 F.3d 699 (5th Cir. 1996). The burden is on the petitioner to show that a state did not strictly and regularly follow the procedural bar at the time pertinent to his state court action. *Stokes v. Anderson*, 123 F.3d 840, 843 (5th Cir. 1999); *Amos v. Scott*, 61 F.3d 333, 342, (5th Cir. 1995); *Sones*, 61 F.3d at 416. In bearing the burden, the petitioner must demonstrate that the state failed to apply the procedural bar to claims which are identical or similar to the claims raised by him. *Stokes*, 123 F.3d at 860; *Amos*, 61 F.3d at 340.

The Court of Appeal dismissed petitioner's claims concerning the allegedly defective bill of information because petitioner failed to file a timely pre-trial motion to quash as required under Louisiana law. The United States Fifth Circuit Court of Appeals has recognized that a Louisiana court's dismissal of a claim based upon the failure to file a pre-trial motion to quash, provides an "adequate and independent" state law ground prohibiting federal *habeas* review unless the federal *habeas* petitioner demonstrates both cause for the procedural default and actual prejudice resulting from the violation of federal law. *Compare Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997) *cert. denied*,  525 U.S. 859, 119 S.Ct. 144, 142 L.Ed.2d 116 (1998). (procedural default occurred when petitioner failed to timely file a motion to quash based upon discrimination in the selection of the grand jury; the Louisiana statutes requiring that attacks on

23

the sufficiency of the bill of indictment or information be made in a pre-trial motion to quash provide an adequate and independent state law ground for dismissal of such claims raised for the first time after trial.)

Finally, "[A] federal district court may, in the exercise of its discretion, raise a *habeas* petitioner's procedural default, *sua sponte* and then apply that default as a bar to further litigation of petitioner's claims." *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).

When a state prisoner has defaulted on his federal claims in the state courts pursuant to an independent and adequate state procedural rule, he can avoid the bar of procedural default only if he can show (1) a miscarriage of justice exists (i.e. actual innocence), *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or (2) "cause for the noncompliance" with state law and "actual prejudice resulting from the alleged constitutional violation." *Coleman*, 501 U.S. at 750 (*quoting, Wainwright v. Sykes*, 433 U.S. 74, 84, 97 S.Ct 2497, 2505, 53 L.Ed. 2d 594 (1972)).

In order for a *habeas* petitioner to avoid a procedural bar by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 478. *Corwin v. Johnson* 150 F.3d 467, 473 (5th Cir. 1998); *Glover v. Cain*, 128 F.3d 900, 904 (5th Cir. 1997);  *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he has been convicted. *Corwin*, 150 F.3d at 473; *Ward*, 53 F.3d at 108.

Furthermore, in order for a *habeas* petitioner to avoid procedural bar by showing cause and prejudice, the petitioner must show that "some objective factor external to the defense"

24

prevented the petitioner from properly raising the claim in state court. *McClesky v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (quoting, *Murray*, 477 U.S. at 488).

A defendant may show "cause" by proving ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution. See *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).  However, "In addition to cause, [he] must show actual prejudice to overcome the procedural bar." *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir.1996) (internal quotations omitted). "The movant makes this showing where he demonstrates that, but for the error, he might not have been convicted." *Id.* (emphasis supplied); *See also Pickney v. Cain,* 337 F.3d 542, 545 (5th Cir. 2003).

In order to show that a failure to consider the claim  will result in a "fundamental miscarriage of justice" the  *habeas* petitioner must show, "... as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635 (5th Cir.1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995). To establish such actual innocence,  petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

Petitioner did not file a timely motion to quash the bill of information; therefore, his claim, raised for the first time in a post-trial motion, was correctly dismissed as procedurally defaulted by the Court of Appeal. Petitioner has failed to show cause, prejudice, or actual innocence and therefore this Court may not reach the merits of his procedurally defaulted claim concerning the defective bill of information.

**D. Claim Four – The lower court erred by limiting voir dire to 1 hour per panel of prospective jurors because this deprived petitioner of full voir dire examination of prospective jurors.**

The Court of Appeals articulated petitioner's fourth claim as follows: "In his fourth assignment of error, the defendant claims the trial court erred by limiting voir dire to one hour per panel of prospective jurors. He claims this arbitrary limit deprived him of a full voir dire." *State of Louisiana v. C.L.J.* at *6.

In denying relief the court observed, "In this case, the trial court extensively questioned the jurors before the attorneys' voir dire. Although counsel objected to the limit, the transcript of the voir dire does not reflect that counsel felt hurried or unable to effectively ascertain bases for challenges. Defendant lists two instances that he believes indicate trial counsel felt limited by the time restraints, but in both instances it appears counsel was merely checking to determine how much time remained, and on one of those occasions even commented that she had only a few more questions but wanted to know how much time was left. In discussing a limit of thirty minutes to question a smaller group for the last few jurors, the court noted that neither attorney had gone over the hour limit for questioning on the previous day, nor had the attorneys indicated more time was needed. Counsel clearly had a sufficient scope of questioning to allow her to exercise both peremptory challenges and challenges for cause. Accordingly, we find no merit to this assignment of error." *Id.*

Petitioner has not shown that the court's findings of fact and conclusions of law were unreasonable. Indeed, the transcripts of the voir dire comprise the bulk of the transcribed information in this case; petitioner has pointed to no specific instance where he was prejudiced as a result of the trial court's decision to impose an otherwise generous limit on voir dire.  See Doc.

26

39-4 (SCR 701-841); 39-5 (SCR 842-1000); 39-6 (SCR 1001-1166) and 39-7 (SCR 1167-1350).

Thus, even if this claim were properly exhausted, it would be subject to dismissal on the merits.

### E. Claim Five – The lower court erred by denying the petitioner's <u>Batson</u> challenge.

The Court of Appeals found no merit to petitioner's *Batson* claim and rejected it as

follows:

> In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the supreme court adopted a three-step analysis to determine whether the constitutional rights of a defendant or prospective jurors had been infringed by impermissible discriminatory practices. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *State v. Handon*, 06–0131 (La.App. 1 Cir. 12/28/06), 952 So.2d 53, 56.
>
> To establish a prima facie case, the defendant must show: (1) the prosecutor's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venireperson on account of his being a member of that cognizable group. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. Without an inference that the prospective jurors were stricken because they are members of the targeted group, the defendant is unable to make a prima facie case of purposeful discrimination and his *Batson* challenge expires at the threshold. *State v. Sparks*, 88–0017 (La.5/11/11), 68 So.3d 435, 468–69.
>
> After the state's seventh peremptory challenge, defense counsel urged a *Batson* challenge, noting that her client was a black male and that six of the state's seven challenges were for black venire persons. The court noted the basis for the *Batson* challenge was 'slight' but instructed the state to offer race-neutral reasons for the exclusion of the nonwhite jurors.
>
> Although the defendant contends the state's reasons for the exclusion of six potential jurors were not race neutral, the defense brief mentions only Mr. Polidore by name in arguing this claim. Nevertheless, we note the state did offer race-neutral reasons for all of the prospective jurors removed by peremptory challenge. Both the state and the court indicated their records reflected that one of the jurors for whom the defense requested an explanation was actually a white

male. The state noted one of the challenged venire persons indicated her brother had been convicted of armed robbery and she believed he had been mistreated. The state claimed two of the venire persons had been excused because of their youth and degree of attentiveness, and the court noted that defense counsel herself had questioned at the time whether one of the challenged jurors was intoxicated. One of the venire persons was challenged because the state felt she was inarticulate, and the assistant district attorney additionally noted that she believed she attended church with the prospective juror. In explaining why it challenged Mr. Polidore, counsel explained that she simply did not believe he would make a good juror. Although the court found the state's reasons sufficiently race neutral, defense counsel argues that Mr. Polidore should have been returned to the jury.

The state, in presenting race-neutral reasons for its excusal of prospective jurors, need not present an explanation that is persuasive, or even plausible; unless a discriminatory intent is inherent in the state's explanation after review of the entire record, the reason offered will be deemed race neutral. A reviewing court owes the trial court's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. *Handon*, 952 So.2d at 58.

During questioning, Mr. Polidore stated his belief that if a child were nervous, the child would lie not to get into trouble. In a case where a child's testimony is crucial, we find no inherent discriminatory intent in challenging a juror who could have discounted the victim's testimony because of his personal beliefs. The trial court did not err in denying the defendant's *Batson* challenge. We find no merit in this assignment of error. *State v. C.L.J.* at *7.

Petitioner does not challenge the facts as found by the Court of Appeal; or indeed the facts articulated by the trial court in finding race neutral reasons for the State's exercise of peremptory challenges to the six black jurors. The trial transcript indicates that counsel for the petitioner entered her *Batson* challenge when the State exercised a peremptory challenge to Mr. Polidore. Counsel was challenged to make her prima facie case and she responded, "Of the seven challenges that she made six were black and only one was white, and we would submit that that makes a prima facie showing. On the jury we only have – we have seven white jurors and three black jurors and we would show – we would submit that the substantial number of black jurors

that she has excused in comparison to the number of white jurors would raise a prima facie case."The Court then directed the prosecutor to "offer race neutral reasons" for her challenges. The prosecutor then explained each challenge:

1. Ms. Payton – "... she testified this was the one where the brother was serving time for armed robbery and she felt that he was wrongly accused..." The Court agreed that Ms. Payton had voiced her belief that her brother had been mistreated.

2. Mr. Hurst – "the State believed because of his age, some of the questions that was [sic] asked he didn't grasp it. He could not articulate or come forward with an understanding that he may be able to understand all of the facts..." The Court agreed noting Hurst "...was very young and articulated his youth and inexperience. As a matter of fact, Ms. Jones had some question about Mr. Hurst ... as to whether she thought he was high or not..."

3. Mr. Wallace – the prosecutor was uncertain as to his race. The Court suggested that he is white and the defense insisted he was black. Finally, the prosecutor explained, "I did not know his race and my challenge was just based similar on Mr. Hurst. I found him to be a little immature in his answers and some responses to questions really were not on point of what was asked of him." The Court concluded, "... his youthfulness is a race neutral reason."

4. Ms. Randle – The prosecutor observed, "We did not get a lot of information out of Ms. Randle. She seemed to be inattentive. Actually, I heard when she was leaving at one dismissal, 'this is bullshit.'" The Court observed, "She was very shy. She was hesitant to answer questions. Her youthfulness..."

5. Ms. Johnson – The prosecutor stated, "She also was not able to articulate or did not understand several of the questions."

29

6. Mr. Polidore – "... His responses were short. He did seem attentive but on the questions that were asked by Ms. Jones and myself, the State just felt that he would not make a good juror." The Court then concluded, "I am with you again. I find they [sic] race neutral reasons in which to excuse these jurors and that it does not have to do just with their race at all. I don't think you've met the burden of proving that this challenge was the State excusing witnesses because of their race and race only." [Doc. 39-7, pp. 165-171; SCR 1331- 1337]

In short, the State offered race-neutral explanations with regard to its challenges of potential jurors on voir dire. The Court of Appeals correctly applied federal jurisprudence when it rejected petitioner's claim on appeal. Compare *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769 (1995).

Petitioner has not established that the Court's conclusions of law and findings of fact with regard to this issue were unreasonable. Therefore, even if he were entitled to a ruling on the merits of this claim, dismissal would be appropriate.

### *3. Motion to Expand the Record [Doc. 38]*

On February 25, 2015 petitioner filed a Motion to Expand the Record.  In conjunction with the motion petitioner provided a copy of an invoice submitted to petitioner's family by trial counsel, Ms. Jones.  The invoice noted that "... $437.50 was used to pay Dr. Howes..." [Doc. 38-1, p. 1] As was noted above, the trial court and the First Circuit Court of Appeal rejected petitioner's claim that he was prevented from putting on his defense when counsel rested without calling any witnesses. Petitioner and his family were unable to recall the name of a physician who was apparently consulted as an expert witness on the issue of whether or not there was physical evidence to establish sexual abuse. Petitioner now claims that the invoice proves that an

expert was retained but not called as a witness.

As previously noted, the First Circuit rejected this claim because it alleged, in essence, that trial counsel rendered ineffective assistance, a claim better suited for post-conviction relief. Here, petitioner cannot expand the record to add ineffective assistance of counsel as an additional claim because the record demonstrates that he has not exhausted State court remedies with regard to the claim. Further, as was demonstrated by the Court of Appeal, petitioner had no need to call an expert witness to establish the lack of physical evidence since the State's witness conceded the issue in her testimony. In short, petitioner's motion should be denied.

### *Conclusion and Recommendation*

Petitioner argued five Assignments of Error on direct appeal. Each assignment was considered and rejected by the Court of Appeals; Assignment of Error No. 3 (defective bill of information) was deemed procedurally defaulted based on petitioner's failure to file a pre-trial motion to quash. Thereafter, petitioner sought review of only one of his claims in the Louisiana Supreme Court. In his writ application, he argued only that the Court of Appeals misapplied Louisiana precedent in determining the quantum of proof necessary to invoke his right to a post-trial hearing on the issue of whether or not he was denied the right to testify by his attorney. Thus, as noted in the Report and Recommendation, State court remedies, with respect to his federal *habeas claims* remain unexhausted. However, should petitioner now return to the Louisiana courts to seek review of his unexhausted claims, his application for post-conviction relief would most assuredly be rejected as repetitive under art. 930.4(A) which prohibits re-litigation of claims fully litigated on appeal.  The undersigned is mindful of the Fifth Circuit's ruling in *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir.1994), namely, that "the bar imposed by

article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Nevertheless, it appears that art. 930.4(A) should be considered as a valid procedural bar in cases such as the instant one where a State *habeas* petitioner has failed to exhaust State court remedies by presenting his assignments of error to the Louisiana Supreme Court on direct review, and, has instead opted to present his unexhausted claims to a federal *habeas* court. Further, to the extent that petitioner exhausted an aspect of his first two assignments of error, this exhausted claim should be denied because it raises issues of State law.

Finally, with regard to all aspects of the five assignments of error raised on direct appeal to the First Circuit Court of Appeal and thereafter to this Court, a review of the entire State record reveals that petitioner has been unable to establish that the State Courts' judgments involved unreasonable fact finding or an unreasonable application of Federal law, and therefore all claims for relief must be denied.

### *Recommendation and Order*

Therefore, considering the foregoing,

Petitioner's Motion to Expand the Record [Doc. 38] is **DENIED;** and,

**IT IS RECOMMENDED** that petitioner's petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. §2254 be **DISMISSED WITH PREJUDICE** for the reasons set forth in the original Report and Recommendation [Doc. 7] and, because each claim fails on the merits.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or

response to the District Judge at the time of filing.

> **Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties  may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the district judge at the time of filing.**

In Chambers, Lafayette, Louisiana June 19, 2015.

_____
**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**

COPY SENT:

DATE:   6/19/2015
BY:   EFA
TO:   RTH
pj

33